

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2007

# Maher v. DE Hudson

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1145

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Maher v. DE Hudson" (2007). *2007 Decisions*. Paper 1675.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1675

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1145

———————

JOHN J. MAHER,
                                        Appellant

v.

DELAWARE AND HUDSON RAILWAY COMPANY

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
D.C. Civil No. 03-cv-00909
District Judge:  The Honorable Edwin M. Kosik

———————

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2007

———————

Before: BARRY, ROTH, <u>Circuit Judges</u>, and DEBEVOISE,<sup>*</sup> <u>District Judge</u>

(Opinion Filed:  February 6, 2007)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

        Appellant John Maher appeals from the District Court's entry of final judgment

_____

        <sup>*</sup> The Honorable Dickinson R. Debevoise, Senior District Judge, United States District
Court for the District of New Jersey, sitting by designation.

following a jury verdict in favor of Appellee Delaware and Hudson Railway Company, Inc. d/b/a CP Rail System ("CP Rail"). He challenges two of the District Court's rulings on proposed points for charge. We will affirm.

## I.

Because we write only for the parties, our recitation of the facts is brief. In late 2002, Maher worked as a conductor for CP Rail. At 5:30 A.M. on December 20, 2002, Maher was working on a freight train traveling from Harrisburg, Pennsylvania to Binghamton, New York. The train was passing over a section of tracks known as the Sunbury Main when it struck a tree that had fallen diagonally across the tracks. As a result of his diving to the floor immediately before the impact, Maher suffered injuries to his shoulder, neck, and arms that prevented him from returning to work with the railroad.

There is no dispute that the base of the fallen tree was outside the railroad's 30-foot right of way and that the tree had been growing on property not owned by CP Rail. It is likewise undisputed that Maher sustained his injuries while in the cab of the train's locomotive as it traveled down CP Rail's track. Maher contends, however, that CP Rail owed a duty to its employees to inspect for and prevent foreseeable harm originating on third-party property, that this particular harm was foreseeable, and that CP Rail failed to make reasonable efforts to discharge its duty.

In May of 2003, Maher filed a complaint against CP Rail in the United States District Court for the Middle District of Pennsylvania, alleging a cause of action for personal injuries under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51

2

– 60 (2000).  Trial before a jury commenced on December 13, 2003.  The District Court

denied Maher's proposed instructions on CP Rail's duty to inspect third-party premises

and his general theory of negligence.  On December 16, 2003, the jury returned a verdict

finding CP Rail not negligent.  Maher timely appeals from the District Court's entry of

final judgment, arguing that the Court erred by denying the two proposed instructions.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331.

We have jurisdiction to review the final judgment of the District Court pursuant to 28

U.S.C. § 1291.

**II.**

We review for abuse of discretion whether jury instructions are misleading or

inadequate, and we exercise plenary review over whether they misstate the law.  *Woodson*

*v. Scott Paper Co.*, 109 F.3d 913, 929 (3d Cir. 1997).  "As on all occasions when we

consider jury instructions[,] we consider the totality of the instructions and not a

particular sentence or paragraph in isolation."  *United States v. Coyle*, 63 F.3d 1239, 1245

(3d Cir. 1995).  The touchstone is "whether, taken as a whole, they properly apprized the

jury of the issues and the applicable law."  *United States v. Boone*, 458 F.3d 321, 326 (3d

Cir. 2006) (internal quotation marks omitted).

> The relevant provision of FELA states that every common carrier by railroad
>
>> shall be liable in damages to any person suffering injury while he is
>> employed by such carrier . . . for . . . injury or death resulting in whole or in
>> part from the negligence of any of the officers, agents, or employees of such
>> carrier, or by reason of any defect or insufficiency, due to its negligence, in
>> its cars, engines, appliances, machinery, track, roadbed, works, boats,

3

wharves, or other equipment.

45 U.S.C. § 51. Under this provision, a railroad owes a "nondelegable duty to provide its employees with a safe place to work even when they are required to go onto the premises of a third party over which the railroad has no control." *Shenker v. Balt. & Ohio R.R. Co.*, 374 U.S. 1, 7 (1963) (collecting cases). This duty requires the railroad to inspect third-party premises before permitting its employees to work on them. *Id.* at 8 (requiring railroad to inspect third-party cars before permitting employees to work with them); *Cazad v. Chesapeake & Ohio Ry. Co.*, 622 F.2d 72, 75 (4th Cir. 1980) (holding that railroad had duty to inspect sidetrack owned by third party on which employees were expected to work); *Carter v. Union R.R. Co.*, 438 F.2d 208, 211 (3d Cir. 1971) (holding that where railroad arranged for its employees to use third party's parking lot so that employees could service third party's plant, railroad had a nondelegable duty to ensure that parking lot and path leading to the plant were reasonably safe). Courts have reasoned that where a railroad would be liable for a defective condition existing on its own property, it may not escape liability due to the mere fortuity that its employee was injured on property owned by a third party. *Shenker*, 374 U.S. at 8-9 (quoting *Balt. & Potomac R.R. Co. v. Mackey*, 157 U.S. 72, 89 (1895), and *Tex. & Pac. R.R. Co. v. Archibald*, 170 U.S. 665, 670 (1898)).

A railroad's broad duty under FELA requires it to take reasonable precautions to protect employees working on its property against foreseeable dangers originating on third-party premises. In *Lillie v. Thompson*, 332 U.S. 459, 462 (1947), the Supreme

4

Court held that a railroad "had a duty to make reasonable provision against" the foreseeable danger of criminals entering onto the railroad's property and causing injury to its employees. Similarly, in *Burns v. Penn Central Co.*, 519 F.2d 512, 514 (2d Cir. 1975), the Second Circuit held that a railroad was "obliged to take measures to ensure" that employees working on trains passing through a dangerous area were not the victims of sniper attacks originating on third-party premises. Although no court has expressly held that a railroad has a duty to inspect third-party premises on which its employees are not expected to work, and we do not so hold, such a duty may well fall within the ambit of the railroad's broad duty under FELA to provide a safe workplace.

CP Rail does not dispute these principles, but argues that the harm caused by the fallen tree was not foreseeable. The Supreme Court has recognized that "reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963). Maher offered evidence that for months prior to the accident, he and other employees periodically complained to management concerning the danger posed by falling trees along this particular section of CP Rail's tracks. CP Rail in turn offered evidence that it inspected its tracks at least two times per week—twice the frequency required by federal regulations—and that it dispatched work crews to cut any trees or branches that could come in contact with a passing train. The last such inspection occurred on the day before the accident.

## A.     Requested Jury Instruction 27

During trial, the parties submitted proposed points for charge. Maher's Requested Jury Instruction 27 stated as follows:

**THIRD-PARTY PREMISES**

> In considering that Mr. Maher's injuries occurred on property possibly owned in part or controlled in part by a third party, I instruct you that CP Rail's duty under the Federal Employer's Liability Act to furnish its employees with a safe place to work extends beyond its own property and onto property which third person's [sic] have a primary obligation to maintain. Specifically, CP Rail's duty includes a responsibility to take reasonable precautions to protect CP Rail's employees from possible dangers on another person or company's property.

(Appellant's App. vol. II at 163.) At the charge conference, the District Court expressed concern over this proposed instruction, noting that all of Maher's supporting cases involved instances in which an employer required an employee to enter upon a third party's premises and the employee was subsequently injured. Here, the Court noted, Maher was injured while on CP Rail's property, thereby rendering the instruction factually inaccurate and the caselaw inapposite. Indicating that it would adequately cover this principle elsewhere in the charge, the Court denied the proposed instruction.

Viewing the jury instructions in their totality, we find that the District Court did not abuse its discretion in refusing to charge Maher's Requested Jury Instruction 27. The factual inaccuracy of this instruction was reason enough to justify the Court's decision. There is no dispute that Maher was injured in the cab of the locomotive while it traveled down CP Rail's track and therefore was not injured on third-party premises. The requested instruction's invitation for jurors to consider "that Mr. Maher's injuries

6

occurred on property possibly owned in part or controlled in part by a third party" (*id.*) was not only misleading but demonstrably false. This statement, coupled with the instruction that CP Rail had a duty to take reasonable precautions against "possible dangers on another person or company's property" (*id.*), would have invited jurors to speculate based on facts not in evidence.

We find, moreover, that the District Court adequately instructed the jury on the relevant legal principles. Maher argues that without the instruction on third-party premises, it was "impossible" for him to establish CP Rail's negligence. We disagree. The Court defined CP Rail's duty broadly and without qualification as to the source of the harm, noting that CP Rail had a "positive obligation to exercise reasonable care, and provide plaintiff with reasonably safe routes and pathways upon which to travel during the course of his employment." (*Id.* at 143.) *See Carter*, 438 F.2d at 211. The Court continued:

> Plaintiff alleges the defendant's conduct at the time and place in question was negligent inasmuch as the defendant failed to maintain a safe work environment in areas required to be traversed by the plaintiff in the course of his employment, which failure to do so made it a menace and a hazardous condition to the safety of plaintiff and employees in like position and caused plaintiff's injuries.
>     We tell you that it's a continuing duty of the defendant as an employer at the time and place in question to use ordinary care under the circumstances in furnishing the plaintiff with a reasonably safe place to work, and to use ordinary care under the circumstances to maintain and keep such place of work in a reasonably safe condition.
>     . . . This duty of the employer is nondelegable, that is, it cannot be passed on to someone else.

7

(*Id.* at 143-44.)[1]

The District Court also instructed jurors on foreseeability, *see Gallick*, 372 U.S. at

117, and charged that Maher could establish negligence by proving by a preponderance of

the evidence that CP Rail's alleged "act or omission played any part, no matter how

small, in bringing about or actually causing the injury or damage." (*Id.* at 145.) *See*

*Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (noting that the test of a case

under FELA is "whether the proofs justify with reason the conclusion that enployer [sic]

negligence played any part, even the slightest, in producing the injury or death for which

damages are sought"). Having instructed the jury on these principles, the Court

summarized the parties' respective positions on the discharge of CP Rail's duty:

> In this case we have had some disagreement as to the location of the tree which obstructed the path of plaintiff and the engineer. The defendant claims that it did everything reasonable to ascertain if obstructions from trees existed, having the area traversed and inspected twice weekly in excess of what the regulations required, including the day before the morning of this accident.
> Plaintiff claimed it makes little difference where the tree was located or where it came from, that the defendant, by use of reasonable care either knew or should have known from all of the circumstances that a special hazard existed and through the exercise of reasonable care defendant should have anticipated a continuing problem, thereby requiring more from the defendant.

(Appellant's App. vol. II at 147-48.) Viewing these instructions in their totality, we find

---

[1] Maher's suggestion that jurors might have been confused into believing that CP Rail could not be liable because the tree was growing on third-party premises is further belied by the closing statement of CP Rail's counsel: "The only evidence in this case is that the tree that eventually fell was not on the railroad's property. Is that determinative? No." (Supplemental App. at 23.)

that they adequately described CP Rail's broad duty to provide a safe place to work and did not suggest any limitations on that duty inconsistent with caselaw. Accordingly, we find that the Court did not abuse its discretion in refusing to deliver Maher's Requested Jury Instruction 27.

## B. Requested Jury Instruction 13

Maher also contends that the District Court abused its discretion by denying his Requested Jury Instruction 13, which stated as follows:

### SPECIFIC ALLEGATIONS

Turning to Mr. Maher's specific allegations, Mr. Maher contends that [CP Rail] was negligent because it required him to work on the Sunbury Main which had become an area of disrepair. There was testimony of numerous trees falling in this area for sometime prior to this accident. This problem was known to the defendant and even on the trip before this incident, Mr. McLane [the engineer] and Mr. Mahre [sic] complained to supervision about the problems with falling trees. Once [CP Rail] instructed Mr. Maher's crew to work in this area, Mr. Maher was expected to operate a train through the Sunbury Main but the defendant failed to take reasonable steps to see that the area was safe. More specifically, Mr. Maher avers that [CP Rail] should have: (1) not allowed Mr. Maher to perform work in an area where there was such a known and repeated problems [sic] with fallen trees; (2) made reasonable effort to inspect the areas for hazardous and unsafe trees; (3) trained its track inspectors to inspect for problems with trees; (4) [CP Rail] should have made some reasonable effort to clear the vegetation in the area of the tracks.

Mr. Maher avers that as a result of [CP Rail's] failure to take the above actions, the area he had to work, to perform his job was not safe because, among other things: (1) the area had insufficient clearance; (2) [CP Rail] failed to use safe work methods by dispatching workers in this unsafe area; and (3) [CP Rail] failed to properly inspect or maintain the area allowing it to become unsafe.

(*Id.* at 161.) According to Maher, the Court had an obligation to instruct as to the

9

circumstances surrounding his theory of negligence.

Even if we overlook the misleading phrasing that suggests a judicial finding that CP Rail knew of the "problem" of falling trees and "failed to take reasonable steps to see that the area was safe" (*id.*), the District Court did not abuse its discretion by denying the proposed instruction. A district court is under no general obligation to summarize a FELA plaintiff's evidence and allegations for the jury. The cases on which Maher relies found reversible error only where a district court's failure to charge on the circumstances surrounding an employee's injuries had the effect of limiting jurors to considering only the proximate cause of those injuries and foreclosed them from considering potential contributing causes established by the evidence. *See Idzojtic v. Pa. R.R. Co.*, 431 F.2d 1029, 1033-34 (3d Cir. 1970); *Hoyt v. Cent. R.R.*, 243 F.2d 840, 844 (3d Cir. 1957). We find no such error here. The Court amply instructed the jury on those of Maher's allegations that were supported by the evidence:

> Plaintiff alleges the defendant's conduct at the time and place in question was negligent inasmuch as the defendant failed to maintain a safe work environment in areas required to be traversed by the plaintiff in the course of his employment, which failure to do so made it a menace and a hazardous condition to the safety of plaintiff and employees in like position and caused plaintiff's injuries.
> . . . .
> In this case, plaintiff claims the defendant's negligence [sic] because it knew or should have known from the conduct and reports plaintiff and other employees made that the route they traversed from Harrisburg to Binghamton was on numerous occasions obstructed by falling trees. And that with the exercise of ordinary care, the defendant should have rendered it safe to traverse, and its failure on the part of the defendant to do so constituted a failure on the defendant to provide a safe working environment.

(Appellant's App. vol. II at 143, 147.)  As noted above, the Court also described the parties' respective positions on the discharge of CP Rail's duty.  (*Id.* at 147-48.)  We find that these instructions adequately described Maher's theory of the case, and that the Court did not abuse its discretion by denying Requested Jury Instruction 13.[2]

## III.

For the reasons discussed, we will affirm the order of the District Court.

---

[2]  Maher contends that the District Court should have instructed the jury on his theory that CP Rail was negligent for failing to train track inspectors to inspect for problem trees. Although a track inspector did testify that he was never trained to inspect standing trees, he also testified that he cut trees that were leaning or were likely to touch a passing train in any way.  Because the evidence does not establish that any failure to train caused Maher's injuries, we do not find that the Court abused its discretion by failing to mention CP Rail's alleged negligent failure to train in its instructions.  *See Hoyt*, 243 F.2d at 844 (requiring district court to charge on surrounding circumstances only where plaintiff offered sufficient proof of those circumstances).